**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 25-cr-290 (CJN)** |
| | : | |
| **PIERRE BLACK,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' CORRECTED MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Pierre Black (hereinafter, the "Defendant"). On January 13, 2026, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), the Defendant pleaded guilty to a Superseding Information charging him with Unlawful Distribution of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). For the reasons set forth below, and consistent with the parties' plea agreement, the United States respectfully requests that the Court impose a sentence of 63 months of incarceration to be followed by 36 months of Supervised Release. The United States also requests that the Consent Preliminary Order of Forfeiture sent to the Court on January 8, 2026, be incorporated into the Judgment.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Around February 2025, the Metropolitan Police Department's Violent Crime Suppression Division Overdose Section, along with the Drug Enforcement Agency, began investigating sales of controlled substances in the 700 block of H Street, NE, Washington, D.C., 20002, following a suspected fatal fentanyl overdose that occurred in the area.[1]

---

[1] At this time, the Government is not alleging that the Defendant was responsible for this fatal overdose.

During the investigation, law enforcement learned that the Defendant was a street-level fentanyl trafficker in Washington, D.C., who sold fentanyl from a store in the 700 block of H Street, NE. As part of its investigation, an undercover law enforcement officer (UC) conducted controlled buys from the Defendant. Over the course of six such buys, the Defendant sold the UC 177 grams of fentanyl for more than $13,000. The below photo on the left shows the 53.90 grams of fentanyl purchased on July 28, 2025, and the photo on the right shows the 55.13 grams of fentanyl purchased on August 21, 2025:

 

On September 5, 2025, the Defendant was arrested in this case, and his residence was searched. During the search, law enforcement found, among other things, a Springfield Armory XD-9 handgun, pictured below, with no chambered round and 9 rounds in a 10-round magazine within a safe in a bedroom closet:



On top of the safe, they found 55.3 grams of a substance containing fentanyl and heroin. In the

kitchen, law enforcement found another 14.27 grams of a substance containing fentanyl, heroin, and medetomidine. The Defendant acknowledged as part of his plea that he possessed the firearm in connection with his drug trafficking.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
    a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) To afford adequate deterrence to criminal conduct;
    c) To protect the public from further crimes of the defendant; and
    d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
    a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) Issued by the Sentencing Commission . . . ; and
        ii) That . . . are in effect on the date the defendant is

3

sentenced

5) Any pertinent policy statement –
    a) Issued by the Sentencing Commission . . . and
    b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

## III.    GUIDELINES CALCULATION

As detailed in the Final Presentence Report (the "PSR") and the plea agreement, with respect to Count One, the base offense level is 26, pursuant to U.S.S.G. § 2D1.1(c)(7). Two points are added pursuant to U.S.S.G. § 2D1.1(b)(1) because a firearm was possessed in connection with the offense. After adjustments for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Count One is 25. The Defendant's Criminal History Category is II. The resulting Guideline range is 63 to 78 months of incarceration.

## IV.    ARGUMENT

For the reasons detailed below, the United States respectfully submits that its requested sentence is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### 1.    The Nature, Circumstances, and Seriousness of the Offense

The Defendant's conduct in trafficking fentanyl is deadly serious. According to the DEA,

fentanyl "is similar to morphine but about 100 times more potent [. . . .] Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction [. . . .]" *See* DEA, Facts about Fentanyl.[2] Startingly, "two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage." *Id.*

To be sure, as a street level trafficker, there is not evidence that the Defendant was trafficking kilogram quantities of fentanyl at a time. But it is sales on the street—sales like those the Defendant was responsible for—that place fentanyl in the hands of users. It is therefore sales on the street that ultimately drive the opioid epidemic. And the toll caused by that epidemic is staggering: roughly 73,690 people in this country died of drug overdoses in the 12-month period ending in April 2025. *See* CDC National Center for Health Statistics, *Provisional Drug Overdose Death Counts* (based on provisional data available as of September 7, 2025).[3] Of these deaths, roughly 42,233 (or about 57 percent) involved synthetic opioids (of which fentanyl is one). *Id.* (By comparison, in 2023, nearly 47,000 people in the United States died of firearms. *See* John Gramlich, *What the data says about gun deaths in the U.S.*, Pew Research Center (March 5, 2025)).[4] This District has not escaped the epidemic's toll: in 2023, Washington, D.C., had an opioid overdose death rate of 49.6 people per 100,000—second among all the states and D.C. only to West Virginia. *See* KFF, *Opioid Overdose Death Rates and All Drug Overdose Death Rates per 100,000 Population (Age-Adjusted)* (2023 timeframe).[5] These startling statistics, moreover, do not account for the non-fatal human suffering that drug addiction causes to users, their families, and

---

[2] https://www.dea.gov/resources/facts-about-fentanyl.
[3] https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm.
[4] https://www.pewresearch.org/short-reads/2025/03/05/what-the-data-says-about-gun-deaths-in-the-us/.
[5] https://www.kff.org/other/state-indicator/opioid-overdose-death-rates.

our community.

But the Defendant did more, possessing a firearm in connection with his drug trafficking—making his conduct all the more dangerous. *Compare Smith v. United States*, 508 U.S. 223, 240 (1993) (noting that "drugs and guns are a dangerous combination"). In light of his conduct, the Government's requested sentence is warranted.

### 2.    The Defendant's History and Characteristics

The instant case is far from the Defendant's first adult involvement with the criminal justice system. He has *eight* prior convictions. Half of those are for drug distribution or possession with intent to distribute. However, only one of the Defendant's prior convictions receives any points, as the rest are so dated. In light of this history, and consistent with the plea agreement and the Defendant's acceptance of responsibility, the Government's requested sentence is appropriate.

### 3.    The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits that the need to deter not only the Defendant, but also others, weighs in favor of the recommended sentence. As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case. With respect to general deterrence, this recommended sentence seeks to promote respect for the law and the safety of the community by hopefully serving as a deterrent to others.

### 4.    Incapacitation

The United States's recommended sentence is also justified to protect the public from the

Defendant, who has a lengthy history of criminal conduct.

## VI.    CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the

Defendant to 63 months of imprisonment, followed by 36 months of Supervised Release. The

United States also requests that the Consent Preliminary Order of Forfeiture sent to the Court on

January 8, 2026, be incorporated into the Judgment. Such a sentence serves the interest of justice

and appropriately balances the sentencing factors articulated in 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Solomon Eppel*
SOLOMON EPPEL
DC Bar No. 1046323
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530